UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELICA ALBAY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:18-cv-00146 AC<br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

////

////

////

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB October 16, 2014. Administrative Record ("AR") 178-88.[2] The disability onset date was alleged to be June 7, 2013. Id. The application was disapproved initially and on reconsideration. AR 102-06, 108-12. On August 18, 2014, ALJ Curtis Renoe presided over the hearing on plaintiff's challenge to the disapprovals. AR 33-70 (transcript). Plaintiff, who appeared with her representative Luanne Wood, was present at the hearing, along with interpreter Maria Martin. AR 33. Ms. Spenser, a Vocational Expert ("VE"), also testified at the hearing. Id.

On June 1, 2017, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 15-25 (decision), 26-29 (exhibit list). On November 20, 2017, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5.

Plaintiff filed this action on January 22, 2018. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 8, 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 17 (plaintiff's summary judgment motion), 18 (Commissioner's summary judgment motion), 21 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born on in 1965, and accordingly was, at age 48, a younger person under the regulations, when she filed her application.[3] AR 38. By the time of the ALJ's order, plaintiff had changed age category to closely approaching advanced age (20 CFR 404.1563). AR 23. Plaintiff obtained a high school and college education in Mexico, where she worked as a nurse. AR 40-41. In the 15 years preceding the ALJ's decision, plaintiff worked as an activities director at a nursing care facility and as a housekeeper. AR 40-43. Plaintiff is most comfortable speaking Spanish, but she speaks "a little" English and has previously worked with "a mix" of Spanish and English speakers. AR 42.

---

[2] The AR is electronically filed at ECF Nos. 13-3 to 13-12 (AR 1 to AR 578).
[3] See 20 C.F.R. § 404.1563(c) ("younger person").

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

////

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

>Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.
>
> 2. [Step 1] The claimant did not engage in substantial gainful activity since July 6, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: right rotator cuff syndrome; degenerative disc disease of cervical spine; pain disorder; cervicalgia; asthma; affective disorder; posttraumatic stress disorder; and panic disorder (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally lift/carry push/pull 20 pounds and frequently 10 pounds; sitting for 6 hours in an 8-hour workday, standing/walking for 6 hours in an 8-hour workday. Occasionally reach overhead with right upper extremity; with all other reaching she can reach frequently to the right. She can climb ramps and stairs frequently, never climb ladders, ropes or scaffolds. Occasionally crawl. She can never work at unprotected heights, around moving mechanical parts, or in extreme cold. The claimant must also avoid concentrated exposure to vibration. She is limited to simple routine tasks. She is capable of superficial interaction with supervisors and coworkers; with no coordinated team tasks to accomplish specific duties but can work around others. No public contact. She is capable of understanding, remembering and carrying out short, simple instructions, making simple work

| | |
|---|---|
| 1 | related decision [sic] and adapting to changes found in a simple work setting. |
| 2 | |

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. [Step 5] The claimant was born [in 1965] and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 6, 2013, through the date of this decision (20 CFR 404.1520(g)).

AR 17-24.

As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 24.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to find plaintiff disabled using "the Grids" at step five, (2) finding that plaintiff could perform jobs in the national economy which she does not meet the requirements to perform, (3) improperly addressing plaintiff's mental illness limitations, and (4) improperly discrediting plaintiff's subjective pain statements. ECF No. 17 at 11- 19; ECF No. 21 at 1-7.

A. <u>The ALJ Did Not Err in Relying on the Vocational Expert</u>

Plaintiff argues that the ALJ acted improperly by failing to find plaintiff disabled under the Medical-Vocational Guidelines ("the Grids"), and by relying on the Vocational Expert's testimony regarding jobs plaintiff could perform in the economy. ECF No. 17 at 15-20. Plaintiff

is incorrect on both counts. At step five, the ALJ bears the burden to prove the existence of a significant number of jobs that a claimant can perform given her RFC. See Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a [vocational expert]; or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., pt. 404, subpt. P, app. 2." Id. "The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress—a claimant's age, education, previous work experience, and physical ability." Lounsburry v. Barnhart, 468 F.3d 1111, 1114–15 (9th Cir. 2006). The Ninth Circuit has clarified when and how to appropriately apply the Grids. "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." Id. (internal citations omitted). Thus, if a person is disabled under the Grids, there is no need to examine non-exertional impairments, but if the same person is not disabled under the Grids, non-exertional limitations must be separately examined. Id.

Here, plaintiff has both exertional and non-exertional limitations. AR 19. The ALJ found that plaintiff was not disabled under the Grids before considering plaintiff's non-exertional limitations and vocational expert testimony. AR 23-24. Plaintiff argues she should have been found disabled under Medical-Vocational Rule 202.09 because she is (1) closely approaching advanced age; (2) illiterate or unable to communicate in English and; (3) is limited to unskilled work. ECF No. 17 at 16. However, as the Commissioner correctly notes, Grid Rule 202.09 assumes a claimant with unskilled work history or no past work. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.09. Plaintiff has skilled past relevant work as a recreation leader (AR 64 (identifying recreation leader as SVP 6)). See SSR 00-4p ("skilled work corresponds to an SVP of 5-9"). This Grid rule also requires the claimant to be "illiterate or unable to communicate in English" which plaintiff, by her own admission, is not. AR 42-43 (plaintiff can speak "a little" English and has previously worked with both English and Spanish speakers). Thus, plaintiff's

7

argument that she should have been found disabled under the Grids without the need to consider her non-exertional limitations and the vocational expert is without merit.

Plaintiff further contends that the ALJ erred at step five by relying on the vocational expert's testimony, because the vocational expert identified jobs plaintiff is not capable of performing. ECF No. 17 at 18-20. The ALJ properly relied on vocational expert testimony for his finding that plaintiff could perform a significant number of jobs in the national economy. AR 23-24. The ALJ asked the vocational expert to assume a hypothetical individual with the plaintiff's age, education, and work experience, who had the same RFC that the ALJ found plaintiff to have (AR 65-66; compare AR 19 (RFC finding)). The vocational expert testified that such a person could not perform plaintiff's past work, but could work as a router, retail marker, or housekeeping cleaner (AR 66-67). This testimony was substantial evidence upon which the ALJ properly relied. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (a vocational expert's "recognized expertise provides the necessary foundation for his or her testimony").

Plaintiff argues that she cannot work as a router, retail marker, or housekeeper because she lacks the required English proficiency. ECF No. 17 at 19-20. The record does not support this assertion. Plaintiff's past work as a recreation leader, which was skilled work that required her to speak and interact in English (as well as Spanish) (AR 42), undermines her claim that she lacks the English proficiency to perform the jobs identified by the vocational expert. Indeed, two of the occupations identified by the vocational expert required Language Level 1, and the other required Language Level 2. See 1991WL 672123 (router: Language Level 2), 1991 WL 671802 (retail marker: Language Level 1), 1991 WL 672783 (housekeeping cleaner: Language Level 1). Plaintiff's past work as a recreation leader, on the other hand, required Language Level 4, and her other past relevant work required at least Language Level 2. See 1991 WL 671590 (recreation leader: Language Level 4); see also 1991 WL 672653 (house cleaner: Language Level 2); 1991 WL 671600 (recreation aide: Language Level 3). Plaintiff's assertion of step five error lacks merit because the ALJ properly relied on the vocational expert's testimony, and the record supports the vocational expert's conclusions.

////

B. The ALJ Properly Addressed Plaintiff's Mental Limitations

With respect to plaintiff's mental limitations, plaintiff contends that the ALJ "makes no allowances for Alby's mental limitations" despite notes from Dr. Bowerman, Dr. Johnson,[4] and Dr. Love. ECF No. 17 at 21-22. This is not the case.

1. The Medical Opinion Evidence

Dr. Sara Bowerman, Ph.D., completed a psychological consultative exam. AR 18, 385-391. Dr. Bowerman opined that plaintiff is (1) mildly impaired in her ability to understand, remember, and carry out simple one or two-step instructions, (2) moderately impaired in her ability to understand, remember, and carry out detailed but uncomplicated job instructions, (3) moderately impaired in her ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions, (4) moderately impaired in her ability to maintain concentration, attention, and for pacing, tracking, and scanning, (5) moderately impaired in her ability to respond appropriately to co-workers and supervisors, and the public, (6) moderately impaired in her ability to respond appropriately to usual work situations (attendance, safety, etc.), (7) mildly impaired in her ability to deal with changes in a routine work setting, and (8) moderately impaired in her ability to interact with others in socially acceptable ways. AR 390-91. Dr. Bowerman did not indicate what plaintiff could do despite those limitations. See 20 C.F.R. §§ 404.1545(a)(1) (RFC refers to the most a claimant can do despite limitations arising from medically determinable impairment).

Dr. Lynn Love provided a mental health assessment on January 20, 2016. AR 403-08. Dr. Love did not provide any medical opinion, but did note that plaintiff was well-dressed with good hygiene, was calm and cooperative, had good concentration and attention, adequate memory and fund of knowledge, spoke at a regular rate, rhythm and volume, had an "angry"/restricted affect with linear and goal directed through processes, with fair judgment. AR 406. Dr. Love assigned plaintiff to an outpatient level of care, re-started her on Sertraline, and started her on
////

---

[4] Incorrectly identified in plaintiff's brief as "Dr. Roberts" at ECF No. 17 at 22, citing AR 414.

Seroquel, Gabapentin and Prazosin, while taking her off Xanax. AR 407. Dr. Love also recommended talk therapy. Id.

The medical record contains visit notes from Dr. Robert Johnson. AR 409-14. Dr. Johnson reported that plaintiff had major depression recurrent and PTSD, and that she has been unable to work because of a shoulder injury. AR 414. Dr. Johnson noted that plaintiff's medications were working sub-optimally and that she has been having increasing auditory hallucinations which "are a complication of the major depression and which have not fully responded to the present dose of Seroquel." Id. Dr. Johnson found plaintiff was "stressed ongoing but not in crisis" and was willing to try a higher dose of Seroquel. Id.

Plaintiff was also assessed by Dr. Susan Barron, Ph.D. AR 275-89. Dr. Barron specifically chose to "defer to [] Ms. Albay's treating physician" in reference to disability, but did opine that plaintiff has an "active psychiatric condition that would undoubtedly cause some work impairment or loss of optimal behavioral performance." AR 285. The record also contains an opinion from State agency physician Dr. E. Covey, Psy.D., who found plaintiff moderately limited in her ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to work in proximity to others without distraction, and ability to complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. AR 92-93. Dr. Covey found plaintiff not significantly limited in all other areas of concentration and persistence. AR 93. Dr. Covey opined plaintiff is moderately limited in her ability to interact with the general public and maintain socially appropriate behavior/maintain basic standards of neatness and cleanliness. AR 93. She was otherwise found not significantly limited in social interaction. Id. Dr. Covey found plaintiff moderately limited in her ability to respond appropriately to change in workplace settings, but otherwise not significantly limited in her ability to adapt. AR 93-94.

////
////

2. <u>Principals Governing the ALJ's Consideration of Medical Opinion Evidence</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Carmickle v. Comm'r.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. <u>Regennitter v. Comm'r.</u>, 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

3. <u>The ALJ Properly Considered the Opinion Evidence as to Mental Limitations</u>

The ALJ gave "great weight" to the only mental health opinions in the record: those of Drs. Bowerman and Barron, and State agency physician Dr. Covey. AR 22. Dr. Bowerman opined that plaintiff had certain mild and moderate limitations, but she did not indicate what plaintiff could do despite those limitations. AR 390; <u>see</u> 20 C.F.R. §§ 404.1545(a)(1) (RFC refers to the most a claimant can do despite limitations arising from medically determinable impairment). Dr. Covey interpreted Dr. Bowerman's finding of mild and moderate limitations to allow plaintiff to perform simple work involving superficial interaction with supervisors and coworkers, and limited public contact (AR 93-94). Since Dr. Covey translated Dr. Bowerman's opinion of mild to moderate limitations into these concrete restrictions, the ALJ reasonably relied

on Dr. Covey's opinion. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (concluding that the ALJ did not reject an examining source's opinion of moderate limitations by adopting a State agency expert's translation of those limitations into "the only concrete restrictions available to him").

The ALJ incorporated mental limitations into plaintiff's RFC that were based on the available mental health opinions, and those limitations are supported by abundant evidence in the record. The ALJ limited plaintiff to "simple routine tasks" and "superficial interaction with supervisors and co-workers; with no coordinated team tasks to accomplish specific job duties[.]" AR 19. The RFC contains a further restriction of no public contact, but finds plaintiff "capable of understanding, remembering and carrying out short, simple instructions, making simple work related decision[s] and adapting to changes found in a simple work setting." Id. Plaintiff makes no specific argument as to why these restrictions do not adequately capture the mental health opinions, which were expressly given great weight; instead she incorrectly asserts that "the ALJ makes no allowances for Albay's mental limitations." ECF No. 17 at 22. Plaintiff's argument is not well supported; it is contradicted by the RFC itself and the record. The court finds no error in the ALJ's evaluation of plaintiff's mental health symptoms.

### C. The ALJ Properly Discounted Plaintiff's Subjective Testimony

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted); see also Molina, 674 F.3d at 1112; Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." (internal quotation marks and citation omitted)).

////

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036 (internal quotation marks and citation omitted); see also Molina, 674 F.3d at 1112; Valentine v. Comm'r., 574 F.3d 685, 693 (9th Cir. 2009). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Berry, 622 F.3d at 1234 (internal quotation marks and citation omitted); see also Lester, 81 F.3d at 834; Dodrill, 12 F.3d at 918. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996). Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.1997).

Plaintiff asserts, without substantive argument, that "the ALJ did not provide clear and convincing reasons to discount Alby's pain," but plaintiff herself cites some of the ALJ's stated reasons: plaintiff's conservative treatment of her musculoskeletal disorders with pain medication, no relevant positive findings from a nerve conduction study, electromyogram or laboratory test to confirm her complaints of radicular symptoms in the upper and lower extremities. ECF No. 17 at 23; AR 20. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)). Plaintiff does not dispute her own record of conservative treatment, and the ALJ was entitled to rely on such treatment history to discount her subjective pain testimony.

Further, the ALJ cited plaintiff's demonstrated activities of daily living, noting they are incompatible with the level of pain she describes. AR 22. Specifically, the ALJ notes that plaintiff has no problems with personal care, cooks, performs household chores, loads and unloads the dishwasher, shops, takes care of and walks her dog, walks, drives, goes out alone,

pays her bills, handles her saving account, and enjoys exercise including walking and bicycling. AR 22, 233-35, 404. Conflicts between a claimant's testimony and her activities of daily living may constitute clear and convincing reasons for rejecting the testimony. Morgan v. Comm'r., 169 F.3d 595, 599-600 (9th Cir. 1999); Burch, 400 F.3d at 680-81. Plaintiff does not point to evidence that undermines the ALJ's assessment of her activities of daily living, and the court's review of the record supports his assessment. There is no error on this point.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18), is GRANTED; and

3. The Clerk of the Court shall enter judgment for the Commissioner, and close this case.

DATED: February 28, 2019

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE